**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NIGEL ALBERT MARIN,<br>Plaintiff,<br>v.<br>California Department of Rehabilitation,<br>Defendant. | Case No. 1:26-cv-03774 JLT FJS<br>ORDER DENYING PLAINTIFF'S REQUESTS FOR INJUNCTIVE RELIEF<br>(Docs. 8, 13) |

Nigel Albert Marin initiated this action on May 18, 2026, alleging in his original complaint that the California Department of Rehabilitation failed to provide "legally mandated vocational rehabilitation services to Plaintiff—a qualified individual with a disability" and that those failures have "cascaded, predictably and preventably, into Plaintiff's current homelessness, complete depletion of his Social Security Disability Income, and imminent irreversible harm to his ability to sit for and pass the July 28, 2026 California Bar Examination." (Doc. 1 at 1.)

On May 18, 2026, the same day he filed his original complaint, Plaintiff also filed an emergency application for a temporary restraining order and preliminary injunction. (Doc. 3.) Therein Mr. Marin requested that the Court order DOR to "immediately authorize and disburse subsistence funding totaling $11,229.13 (plus $306 in monthly parking permits)" for the "displacement period of May 1 through July 28, 2026, and to authorize his purchase of a laptop as a "vocational workspace tool." (*Id*. at 1–2.)

On May 20, 2026, the Court denied his TRO request, explaining as follows:

> Plaintiff's motion must be denied because the Court is unable to find likelihood of success on the merits, let alone that "the law and facts clearly favor" Plaintiff.
>
> First, Plaintiff cannot succeed on his Due Process claim because there is no private right of action under the Due Process Clause. *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution."). Instead, "a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." *Id*. (citations omitted). Plaintiff does not attempt to frame his Due Process claim as one arising under § 1983 and he cannot do so. This is because the only named defendant, DOR, is an agency of the State of California and therefore is immune from a suit for damages under § 1983. *See N. Ins. Co. of N.Y. v. Catham County, Ga*., 547 U.S. 189, 193 (2006); *see also Lett v. California Dep't of Rehab*., No. 2:12-CV-2265 MCE GGH, 2012 WL 5880440, at *3 (E.D. Cal. Nov. 21, 2012) ("The California Department of Rehabilitation cannot be sued for damages in federal court because of Eleventh Amendment immunity.").
>
> As for Plaintiffs' other federal claims arising under the ADA and Rehabilitation Act, the Court has serious doubts as to their viability. Plaintiff's complaint focuses on services that DOR has refused to provide as part of his IPE. However, to make out a claim under the ADA, Mr. Marin must allege facts to support a plausible inference that "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was <u>by reason of his disability</u>." *Updike v. Multnomah Cnty*., 870 F.3d 939, 949 (9th Cir. 2017) (emphasis added). Similarly, Section 504 requires allegations that suggest Mr. Marin was prevented from enjoying "'meaningful access' to a benefit <u>because of [his] disability</u>." *Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008) (emphasis added); *see also Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (to establish Rehabilitation Act violation a plaintiff must show, among other things, that he was "denied the benefit or services solely by reason of [his disability]").
>
> The difficulty here is that Plaintiff is attempting to bring these claims against DOR for administering a program that is only available to individuals with disabilities, and it remains unclear what, if any, program benefit Mr. Martin has been denied <u>due to his disability</u>. For example, in *Avila v. California*, No. 8:19-00613 JVS (ADS), 2021 WL 518710, at *6 (C.D. Cal. Jan. 4, 2021), *report and recommendation adopted* No. 8:19-00613 JVS (ADS), 2021 WL 515385, *6 (C.D. Cal. Feb. 10, 2021), the plaintiff alleged that DOR denied him Vocational Rehabilitation Services to attend law school "because he took 20 years to complete a Masters Degree because he is disabled." Even that allegation was insufficient to survive a motion to dismiss because the record revealed multiple,

> nondiscriminatory reasons existed for DOR's decision not to fund law school for the Plaintiff. *Id*; *see also Wildey v. California*, No. 07CV1154 JM (JMA), 2010 WL 1031211, at *7 (S.D. Cal. Mar. 19, 2010) (refusing to find an ADA or Rehabilitation Act violation for DOR employee who participated in vocational training program that was only available to disabled individuals, but separately evaluating whether the vocational training program provider reasonably accommodated employee's disability by providing a flexible schedule).
>
> Unlike in *Avila*, the present allegations provide absolutely no insight into how DOR's decisions to deny Mr. Marin's requests for benefits were "because of" a disability. For one thing, the Complaint does not attach a copy of any decision from DOR about his benefits. Nor is it apparent on this record why Mr. Marin's disability would have factored into DOR's determination that it is inappropriate to purchase Mr. Marin a performance laptop or provide him with a subsistence stipend for the period from May 1 through July 28.
>
> Plaintiff argues that Defendant's "written admission" eliminates any core factual dispute and renders his success "near-certain." (Doc. 3 at 3–4.) But the written admission to which Plaintiff refers (*see* Doc. 3 at 4, 11) is a May 11, 2026 email from his DOR Counselor that appears to indicate DOR plans to pay for Plaintiff's food, hotel, and travel accommodations during the July 2026 bar exam itself. (Doc. 1 at 16.) This email confirms DOR's willingness to provide a benefit that is not in dispute; it does not justify a finding that Plaintiff is entitled to the additional benefits and payments he demands as part of this request for injunctive relief.
>
> For these reasons, the Court cannot find likelihood of success on the merits. Thus, the request for injunctive relief (Doc. 3) is **DENIED**.

(Doc. 4 (footnote omitted).)

Thereafter, Plaintiff filed a motion to amend (Doc. 6), a motion for reconsideration of the denial of his application to proceed in forma pauperis (Doc. 7), and numerous other documents including some filings submitted on or about June 11, 2026 that appear to have been intended as a renewed request for a TRO. (*See* Doc. 8.)[1]

On July 1, 2026, the assigned magistrate judge granted the motion to amend and the

[1] Plaintiffs' filings are labeled in a manner that did not make it immediately clear that he was requesting reconsideration of the Court's denial of his TRO Request. For example, his filing is labeled "amended addendum to renewed ex parte application for temporary restraining order" but the documents he submitted to the Court do not appear to contain any actual renewed ex parte application for a temporary restraining order, so the motion was not immediately flagged for action by the Court.

request for reconsideration regarding Plaintiff's in forma pauperis application. (Doc. 11.) The magistrate judge also ordered the docketing of Plaintiff's first amended complaint. (Doc. 11 at 7; Doc. 12.)[2] On August 3, 2026, Plaintiff filed a motion for preliminary injunction.

First, Plaintiff' renewed request for a TRO filed is without merit. The Court's May 20, 2026 Order concluded that Plaintiff had not sufficiently alleged how DOR failed to reasonably accommodate him. The current record fares no better. For example, Mr. Marin asserts that certain communications from DOR promised him financial assistance with housing, but facially they do not appear to do so. Rather, they reveal only that DOR was attempting to assist Plaintiff with the process of identifying housing options that fit within his own budget. (*See* Doc. 9.) That Mr. Marin may have read them otherwise or asked leading questions in response to DOR communications does not change the nature of the statements DOR made. In addition, the TRO request concerned Mr. Marin's attempts to have DOR pay for his housing, subsistence, and equipment needs leading up to the July 2026 bar exam, which has now come and gone. Thus, his TRO request is moot.

Plaintiffs' recent motion for a preliminary injunction (Doc. 13) was filed after the July bar exam concluded and concerns events that occurred shortly before and during that examination period. Among other things, Plaintiff alleges that he experienced difficulties accessing benefits DOR apparently agreed to provide him during the examination period. (*Id.*) Plaintiff argues that his bar exam experience involved a "one-time, non-repeatable" event of sitting for the exam "compromised by lack of sleep, lack of food, and denial of a disability accommodation" in the form of a provided laptop "that cannot be retroactively cured by a later damages award, because the professional and career consequences of the exam outcome are not fungible with money." (Doc. 13 at 13.) Plaintiff argues that "[h]ad interim relief issued before July 26, 2026, the conditions that produced this harm" including DOR's failure to respond to his correspondence, failure to provide him with a hotel check in "fallback," failure to resolve his disputes about their

[2] The document the Court eventually docketed as the first amended complaint is captioned "Plaintiff's Supplemental Brief in Support of First Amended Complaint (Lodged Concurrently with Motion for Leave)," (Doc. 12.) but the docket still does not appear to contain any document entitled First Amended Complaint.

per diem policy, and failure to reassign his case/account to different DOR personnel – would have been subject to court ordered correction before they materialized into injury." (Doc. 13 at 18.) He contends that the "continued absence of a ruling has permitted the same unaddressed conditions to persist past the exam date itself, meaning the harm . . . remains uncorrected and ongoing today." (*Id.*)

None of these alleged "continuing harms" merit the extraordinary remedy of a mandatory injunction at this stage of the case. First, the facts that underpin Plaintiff's preliminary injunction motion are not set forth in any pleading before the Court. Thus, it remains unclear how the events of the July 2026 bar examination support any viable federal claim. Finally, given that the July 2026 bar exam is now complete and the next opportunity to sit for the exam is not until February, the Court sees no need to adjudicate <u>any</u> request for injunctive relief until at least after the case has been screened and Defendants have been served. Thus, the motion for a preliminary injunction is **DENIED**.

To be clear, the Court does not currently possess a document that will operate as a first amended complaint. (*See* footnote 2.) Thus, **within 30 days of the date of this order**, Plaintiff **SHALL** either file his first amended complaint OR a second amended complaint in which he may attempt to add information about the events that took place during the July 2026 bar examination. It **SHALL NOT** be supported by a brief of legal authorities. **Plaintiff is warned that if he fails to file an amended complaint by that deadline, the Court may initiate proceedings to dismiss this case for failure to prosecute.**

IT IS SO ORDERED.

Dated: <u>August 6, 2026</u>

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE